## Chicago Edison Co. v. Mary Moren, Adm'x, etc.

1. NEGLIGENCE—*Insufficient Proof of.*—Evidence which fails to prove what a certain alleged defect was, whether it was patent or latent, or whether by the exercise of ordinary care it could have been detected on inspection, is insufficient as proof of negligence.

2. DAMAGES—*When $5,000 is Not Excessive.*—Where the deceased left surviving him his widow and four children, the eldest fourteen and the youngest three years of age, the evidence showing that while living he supported his family, $5,000 is not excessive.

Action in Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. GEORGE A. TRUDE, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed November 27, 1899. Petition for rehearing denied.

AMERICUS B. MELVILLE and F. J. CANTY, attorneys for appellant.

JUDD & HAWLEY, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment for $5,000 recovered by appellee in a suit against appellant and the Merchants' Transfer Company. The facts, in so far as they are necessary to the decision of the appeal, are substantially as follows:

The Chicago Edison Company employed the Merchants' Transfer Company to take down and remove from the plant of the former its boiler and engines. The boiler weighed between 26,070 and 28,000 pounds, was from 18 to 20 feet in length, and rested on a brick foundation about 3½ feet high. By the terms of the contract between the companies, the Merchants' Transfer Company had the exclusive right to determine the manner of removal of the boiler, and the machinery and appliances by which such removal would be effected. The work of removing the brick foundation, so that the boiler might be lowered onto skids preparatory to removal from the building, was the work of appellant, and was exclusively under its control and direction. The Trans-

fer Company sent to appellant's building its foreman, John Brown, with a gang of its men and the necessary appliances to hoist and remove the boiler.   When Brown arrived with his men at appellant's building, appellant's foreman, Patrick Tully, was there with a gang of appellant's men, of whom Thomas Moren, appellee's intestate, was one.   At that time the brick had been removed from beneath the north end of the boiler and that end was temporarily supported by iron slabs or legs.   The south end rested in an arch in the brick foundation.   It was hoisted in the usual way and by means of the usual appliances.   John Brown, foreman of the Transfer Company, testified:

"The chain we used was a three-fourths inch chain. There were two drums to that boiler.   We used two chains, each three-fourths inch.   Each chain was wrapped twice round each drum.   Overhead they were fastened by a pulley and a hook—fastened by a pulley.   The pulley was fastened by the hook.   These chains were around different drums and united up there in the hook that was fastened to a beam above.   It was one chain, but three times in the hook."

The chain was not only twice around each drum, but came together and hung double in the hook.   The chain was iron, capable, as was estimated, of supporting a weight of 29,000 pounds used singly, and twice that weight when used as above described.

Van Court, the treasurer and cashier of the Merchants' Transfer Company, and who had general supervision of the business of that company, was present when Brown, the foreman of the company, was ready to commence hoisting the boiler from the foundation, and seeing some of appellant's men working under the boiler, he spoke to Tully, appellant's foreman, telling him that he had better take his men from under the boiler until it should be hoisted and blocked up.   The men then came from under the boiler. After so cautioning Tully, Van Court went to lunch and did not return till after the accident hereinafter mentioned occurred.   After Van Court left, the boiler was hoisted about six inches above the brick foundation, and about four

feet, or a little more, above the floor, no one at that time being under it. When it was so hoisted, Brown and several of the men under him got on top of it and swung, surged and tested it, which, when done, Brown says he said, "It is all right," and then the men went back under the boiler. Tully, appellant's foreman, testified that Brown said, "All right, go ahead," and also testified that he, Tully, told Thomas Moren to go to work under the boiler after it was hoisted. In about five or ten minutes after Brown said it was all right, the boiler fell. Moren, at that time, was under the south end of it, working at the brick foundation, and was crushed by the falling boiler and killed.

At the close of the plaintiff's evidence her attorney dismissed the case as to the Merchants' Transfer Company, and the appellant, after the overruling of certain motions, which will be hereinafter considered, introduced evidence on the merits, and the case went to the jury. The jury found appellant guilty and assessed appellee's damages at the sum of $5,000, for which sum judgment was rendered.

The declaration consists of a number of counts, in all of which, except the fifth, the negligence relied on is the failure to furnish ordinarily safe chains and appliances for the work of removing the boiler. These counts aver that the removal was made under the superintendence of the foreman of the Merchants' Transfer Company, and the engineer of appellant. The evidence is conclusive that only the employes of the Transfer Company were subject to the direction or control of that company, or its foreman; that Tully, appellant's foreman, had exclusive control of appellant's men; that appellant's part of the work was confined exclusively to the removal of the foundation of the boiler, and that the Transfer Company had nothing to do with the removal of the foundation, but only with the removal of the boiler itself. The only evidence offered by appellee in support of the allegation that ordinarily safe appliances were not used for the removal of the boiler was, that the boiler fell, and that a link of the chain broke or parted. What the

defect was, whether it was patent or latent, or whether by the exercise of ordinary care it could have been detected on inspection, was not proved. This evidence was clearly insufficient as proof of negligence. Sack v. Dolese et al., 137 Ill. 129; Colfax C. & M. Co. v. Johnson, 52 Ill. App. 383.

Appellant introduced evidence negativing negligence in the matter of the appliances. Therefore the evidence did not warrant a recovery on the counts mentioned. The fifth count, after alleging necessary preliminary matters, avers, in substance, that after the boiler was hoisted above the foundation, Moren, appellee's intestate, and his co-laborers, were directed by Tully, the foreman, to work under the boiler, which they did; that it was well known to the appellant that to do so was dangerous, but unknown to Moren; that appellant, by its foreman, negligently failed to prevent Moren from going under the boiler, etc.

The question is whether the evidence is sufficient to support a verdict under this count. We are of opinion that it is. Tully, appellant's foreman, was warned by Van Court of the danger of being under the boiler while it was being hoisted or before it should be supported by blocks. His testimony is: " As a precautionary measure, I spoke to the foreman of the Chicago Edison Company, Mr. Tully, and told him he had better take his men from there, and keep them out until that boiler was hoisted and blocked up." Van Court, as heretofore stated, was the treasurer of the Merchants' Transfer Company, and had the general supervision of its business; he was the superior of Brown, the foreman of the company, and a warning from him (acquainted as he was with the perils of the business) of the danger of working under the boiler when hoisted above the foundation, carried with it peculiar force, and should not have been disregarded by Tully. Van Court had no authority over appellant's men, who were working under Tully; therefore all he could do was to advise Tully to keep them from beneath the boiler till it should be hoisted and blocked up. Tully took his men from under the boiler when so advised, but subsequently, while the boiler was hoisted and hanging by the

chains, ordered them under it. It is no excuse for this, if Brown said, after testing the condition of the boiler and hoisting appliances by swinging on the boiler when it was hoisted, "All right, go ahead." Brown had no control over Tully or over appellant's men working under Tully, and Brown testified that the only directions he gave were to the men of the Transfer Company, of whom he was foreman. We think it was a proper question for the determination of the jury, whether appellant, by its foreman, was guilty of negligence in ordering Moren to go under the boiler after it was hoisted and before it was blocked up, the foreman having been warned of the danger in so doing. It is clear that had Van Court's warning been heeded, Moren would not have lost his life as he did.

We think the verdict is sustained by the evidence, and that appellant's motion to take the case from the jury was properly overruled, and its instruction to that effect properly refused.

Appellant, at the close of appellee's evidence and also at the close of all the evidence, asked the court to give the following instruction: "There is no evidence tending to support the allegation of the first count of the second amended declaration; you will therefore find the defendant, the Chicago Edison Company, not guilty." A similar instruction was asked in respect to each count of the declaration. By each of the instructions the jury were authorized to find the defendant not guilty, generally, even though the evidence tended to support some other count than that designated in the instruction. On the hypothesis that the evidence tends to support the fifth count, which we hold it does, the instructions were properly refused. It is urged that the verdict is excessive. In this we can not concur. The deceased left surviving him, appellee, bis widow, and four children, the eldest fourteen and the youngest three years of age, and the evidence is that while living he supported his family.

Other objections are urged by appellant's counsel, none of which we think tenable.

The judgment will be affirmed.